UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIAN GUERINGER | CIVIL ACTION |
| VERSUS | NO: 26-670 |
| DAVID CROCKETT STEAM FIRE COMPANY NO. 1 | SECTION: "A" (1) |

**ORDER AND REASONS**

The following motion is before the Court: **Motion for Partial Dismissal (Rec. Doc. 7)** filed by the defendant, David Crockett Steam Fire Company No. 1 (“Crockett” or “Defendant”). The plaintiff, Brian Gueringer (“Gueringer” or “Plaintiff”), opposes the motion. The motion, submitted for consideration on October 28, 2026, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is granted in part and denied in part.

**I. Background**

Gueringer commenced these proceedings against Crockett, his former employer, on March 30, 2026. The factual crux of Gueringer’s amended complaint[1] is that he was unlawfully terminated due to certain medical conditions, and that while he was on medical leave Crockett improperly attempted to obtain his medical records.

Gueringer began his employment with Crockett on November 2, 2023, as an

[1] The governing pleading is the First Amended Complaint (“FAC”), which Gueringer filed in lieu of an opposition to Crocket’s first motion to dismiss for failure to state a claim.

operator/ firefighter. Less than six months later, on April 16, 2024, Gueringer went out on paid sick leave "due to serious medical conditions, including blood clots and Crohn's Disease." (Rec. Doc. 5, FAC ¶ 22). Gueringer alleges that when he notified his supervisor of his diagnosis and need for medical leave his supervisor made disparaging remarks regarding his health. (FAC ¶ 23).

Gueringer takes issue with the fact that Crockett took steps to confirm his medical diagnosis. On April 29, 2024, Crocket requested that Gueringer sign a release for medical records but Gueringer refused. (FAC ¶ 29). Gueringer learned that on April 30, 2024, a Crockett representative contacted his physician directly and without authorization to obtain medical information regarding his medical condition. (FAC ¶ 30).

On August 26, 2024, Gueringer underwent a medical examination by Crockett's departmental physician who reported that Gueringer was not yet ready to return to work. (FAC ¶ 31). On September 6, 2024, while Gueringer was out on paid sick leave, Crockett instructed him to report to the fire station and sign for receiving Crockett's revised time and attendance policy. (FAC ¶ 32).

Plaintiff remained on paid medical leave for the remainder of 2024 and well into 2025 until his 52 weeks of paid sick leave ran out, which occurred around April 13, 2025. On April 10, 2025, Crockett issued Gueringer a termination letter advising him that he was being terminated effective April 14, 2025. (FAC ¶ 33). Then something remarkable happened—upon learning that he was being terminated and that all benefits would cease, Gueringer sought and obtained an unrestricted medical release from his

physician which cleared him to return to full duty effective April 11, 2025—in other words, immediately—with no restrictions. (FAC ¶ 34). But Crockett was not impressed, and rather than allow Plaintiff to return to work, Crockett simply moved the termination date up to April 11, 2025. (FAC ¶ 35).

Crockett complains that Gueringer "spun this relatively narrow nucleus of alleged facts" into a sprawling eighteen separate causes of action (*i.e.*, counts). (Rec. Doc. 7-1, Memorandum in Support at 1). Crockett argues that the FAC is "a paradigm of shotgun pleading" which violates the Federal Rules of Civil Procedure, a characterization not surprising given that the FAC "sprawls on for 41 pages and 195 paragraphs." (*Id.* at 2).

Crockett's current Rule 12(b)(6) motion to dismiss, this one being directed at the FAC as opposed to the original complaint, seeks partial relief, moving for dismissal of all claims with the exception of Gueringer's claims for ERISA interference ("Fifth Cause of Action"), Rehabilitation Act discrimination ("Twelfth Cause of Action"), and Americans with Disabilities Act ("ADA") discrimination ("Fifteenth Cause of Action").

Gueringer has filed a partial opposition to Crockett's motion advising that he does not oppose dismissal without prejudice of the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fourteenth, Eighteenth, and Nineteenth causes of action.[2]

Thus, the scope of Crockett's partial motion to dismiss has been narrowed

---

[2] Plaintiff has requested a dismissal without prejudice of the counts that he not opposing, and Crocket opposes this request. The Court agrees that Plaintiff is not entitled to a dismissal without prejudice. Even with the benefit of the arguments that Crocket had raised in its first motion to dismiss, Gueringer filed the FAC with all counts included forcing Crockett to expend resources briefing all counts in its motion to dismiss even though some of them were legally frivolous.

significantly to challenge the viability only of Count 1 (Louisiana Firefighter Bill of Rights, La. R.S. § 33:2181, *et seq.*), Count 4 (Invasion of Privacy), Count 13 (Retaliation, Section 504 of the Rehabilitation Act), Count 16 (ADA Retaliation, 42 U.S.C. § 12203), and Count 17 (ADA Disability-Related Medical Inquiries, Medical Examination, Confidentiality, and Improper Use of Medical Information, 42 U.S.C. § 12112(d) (pleaded in the alternative)).

The parties' arguments are addressed below.

## II. Discussion

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

In the context of a Rule 12(b)(6) motion to dismiss  the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the

plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

**Count 1 (Louisiana Firefighter Bill of Rights)**

Count 1 alleges that Crockett violated the Louisiana Fire Service Bill of Rights ("FBOR") when it made inquiries into his medical status because such inquiries constituted an "investigation," yet said investigation did not comply with the procedural safeguards required by statute. Plaintiff maintains that because the "investigation" did not comply with the procedural requirements of the FBOR, his termination is an absolute nullity.[3] Gueringer therefore seeks reinstatement, restoration of benefits, and back/front pay.[4] (FAC ¶ 63).

The procedural protections of the FBOR are triggered when the employee "is ***under investigation*** with a view to possible disciplinary action, demotion, or dismissal."

---

[3] Crockett characterizes Gueringer's claim as being contradictory insofar as he argues that the FBOR requires an investigation prior to any adverse employment action yet he was terminated without an investigation. The better characterization of Gueringer's claim is that he does take the position that an investigation occurred, thereby triggering the FBOR, just not one that complied with the requirements of the FBOR.

[4] In response to Crockett's motion to dismiss, Gueringer confirms that he is not asserting a free-standing damages claim as part of the relief being sought in Count 1.

La. R.S. § 33:2181(A)(1) (emphasis added).

B. Whenever a fire employee is ***under investigation***, the following minimum standards shall apply:

> (1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.
>
> (2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.
>
> (3) Any interrogation of a fire employee in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest and personal necessities of such fire employee.
>
> (4) All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.
>
> (5) The fire employee shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation. The fire employee's representative or counsel shall be allowed to offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation.
>
> (6) The counsel or representative for the fire employee under investigation may call witnesses to testify on the employee's behalf.
>
> (7) No statement made by a fire employee during the course of an administrative investigation shall be admissible in a criminal proceeding.

La. R.S. § 33:2181(B) (emphasis added).

C. No fire employee shall be disciplined, demoted, dismissed or be subject

> to any adverse action unless the investigation is conducted in accordance with this Subpart. Any discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity.

*Id.* § 33:2181(C).

The FBOR does not define "investigation," even though the applicability of the protections provided by the foregoing subpart of the FBOR turns on whether the employee was "under investigation."

Gueringer was terminated even though he alleges that he was prepared to return to work without restrictions when his paid sick leave ran out. Crockett gave no reasons for the termination. It is unclear whether the termination was disciplinary in nature. At this point Gueringer simply does not know—only Crockett knows. Regardless, Subpart C above prohibits dismissal without an investigation that complies with the statute. Such a compliant investigation did not occur. This much is undisputed. The Court is persuaded that the issues raised by Crocket in its partial motion to dismiss with respect to Count 1 cannot be resolved on the pleadings. The motion to dismiss Count 1 is denied.

**Count 4 (Invasion of Privacy)**

Gueringer alleges that Crockett committed the tort of invasion of privacy when it attempted to obtain information from his physician without authorization in 2024, and then exploited his private medical information and medical release status in April 2025. (FAC ¶ 90).

Crockett argues that any claim based on conduct that occurred before July 1,

2024, when the law in Louisiana changed to prospectively provide a two-year prescriptive period for delictual actions instead of a one-year period, is prescribed because this lawsuit was not filed until March 30, 2026. Gueringer recognizes the validity of Crockett's argument, and therefore opposes dismissal only as to those portions of Count 4 grounded on conduct that occurred after July 1, 2024, when the two-year prescriptive period applies. Therefore, the motion to dismiss Count 4 is granted in part as to any part of Court 4 grounded on conduct that pre-dates July 1, 2024.

**Counts 13 and 16 (Retaliation)**

Count 13 and Count 16 both allege unlawful retaliation, the former based on the Rehabilitation Act and the latter based on the ADA. The elements of the two claims are essentially the same requiring activity protected by the Act, and adverse employment action, and causation, *i.e.*, a causal connection between the adverse employment action and the protected activity. Crockett argues that Gueringer's allegations do not support protected activity, and that the lack of temporal proximity between his termination and some of the events that occurred in 2024 dispels the assertion of causation.

For the reasons argued in Gueringer's opposition, the Court is persuaded that he as alleged sufficient factual material to withstand dismissal of his retaliation claims on the pleadings.[5] Therefore, the motion to dismiss Counts 13 and 16 is denied.

**Count 17 (ADA Disability-Related Medical Inquiries, etc.)**

Plaintiff alleges that Crocket violated the ADA when it made medical inquiries and

---

[5] Plaintiff does recognize that emotional distress damages are not available for his retaliation claims.

demanded that Gueringer have a medical examination in 2024. But as Crockett points out, and Gueringer cannot legitimately dispute, any claim based on this 2024 conduct was not the subject of a timely EEOC charge and therefore is time-barred.

Gueringer argues, however, that his claim should be allowed to continue based on the allegation that Crockett violated the ADA when Gueringer provided Crockett with his full release to unrestricted duty in April 2025. Gueringer complains that Crockett did not use the release to identify any actual restrictions or reasonable accommodations like it should have. But as Crockett points out, and Gueringer cannot legitimately dispute, Crockett had no reason to make such inquires because the release allowed Gueringer to return to full duty with no restrictions. Crocket also points out that Gueringer produced the release without any inquiry from Gueringer, which the ADA would require. The motion to dismiss Count 17 in its entirety is therefore granted.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Dismissal (Rec. Doc. 7)** filed by the defendant, David Crockett Steam Fire Company No. 1 is **GRANTED IN PART AND DENIED IN PART** as explained above.

November 9, 2026

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE